```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

NICOLE MARIANI,

             1:18-cv-14747-NLH

     Plaintiff,

             **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

   *On behalf of Plaintiff*

EDA GIUSTI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

   *On behalf of Defendant*

**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of

("SSI")[2] under Title II and Title XVI of the Social Security

Act.[3] 42 U.S.C. § 401, et seq. The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled between November 30, 2007 and May 5, 2015. For the

reasons stated below, this Court will affirm that decision.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On November 12, 2010, Plaintiff, Nicole Mariani,

protectively filed[4] an application for DIB and SSI alleging that

---

quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI. See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945). The Court will provide citations only to the DIB regulations. See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the

2

she became disabled as of November 30, 2007.[5]  Plaintiff claims that she can no longer work at her previous job as medical receptionist because she suffers from bipolar depression and general anxiety disorder, as well as several other impairments.

     Plaintiff's applications were originally denied on January 31, 2014.  That finding was reversed on appeal to the district court and remanded for further proceedings on April 14, 2016.  The ALJ held a second hearing on July 11, 2017, and issued a partially favorable decision on February 9, 2018.  The ALJ determined that Plaintiff was disabled as of May 5, 2015, but that Plaintiff was not disabled before that date.  Plaintiff filed exceptions with the Appeals Council, which determined that the exceptions did not provide a basis for changing the ALJ's decision, and it declined further review, causing the ALJ's decision to be final and ripe for appeal to this Court.

---

formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of disability is November 30, 2007, the relevant period for Plaintiff's SSI claim begins with her November 10, 2010 application date, through the date of the ALJ's decision on February 9, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

4

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the

5

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience,

6

engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[6] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

7

disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of bipolar depression, general anxiety disorder (GAD) without agoraphobia, obsessive compulsive disorder, attention deficit hyperactivity disorder, and fibromyalgia were severe. At step three, the ALJ determined that Plaintiff's

severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. At step four, the ALJ determined that Plaintiff had a residual functional capacity ("RFC") at the unskilled, sedentary level prior to May 5, 2015.[7] At step five, the ALJ determined that no jobs in the national economy existed that Plaintiff could perform as of May 5, 2015, but prior to that date, Plaintiff's RFC rendered her capable of performing jobs such as a final assembler - optical goods, rating clerk, and addresser clerk. Thus, the ALJ found Plaintiff not to be disabled from November 30, 2007 through May 4, 2015, but as of May 5, 2015 and through the date of her decision, Plaintiff was disabled and entitled to benefits.

Plaintiff argues that the ALJ erred in three ways. Plaintiff argues that the ALJ failed in her step three analysis when she found that none of Plaintiff's impairments equaled the listings. Plaintiff further argues that the ALJ's finding as to Plaintiff's RFC prior to May 5, 2015 was not supported by substantial evidence. Plaintiff also challenges the vocational

---

[7] 20 C.F.R. § 404.1568 (explaining that unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

expert's resources to support the ALJ's finding that alternative jobs existed that Plaintiff could perform prior to May 5, 2015.

### 1. Whether the ALJ erred at step three

At step three, an ALJ must consider whether a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, and has lasted or is expected to last for a continuous period of at least twelve months. If so, the claimant will be found "disabled." Plaintiff argues that the ALJ erred by finding that none of Plaintiff's impairments met any of the listings because she improperly discounted the opinion of a medical expert, Dr. Joseph Vitolo, a specialist in psychiatry. Dr. Vitolo found that Plaintiff's impairment met the listings for 12.04, Depressive, Bipolar, and Related Disorders, 12.06, Anxiety and Obsessive-Compulsive Disorders, 12.08, Personality and Impulse-Control Disorders, and 12.11, Neurodevelopmental Disorders.

The Court does not agree. The ALJ conducted a lengthy and thorough step three analysis. The ALJ recited all of Dr. Vitolo's opinions (R. at 782-784), and declined to "accept Dr. Vitolo's testimony of the severity of [Plaintiff's] symptoms, especially at the listing level severity, going back to November 2007 through the date of the doctor's testimony" (R. at 784). To support her position, the ALJ detailed the opinions of three other examining physicians (R. at 784-786), whose opinions

demonstrated to the ALJ that prior to May 5, 2015, Plaintiff had only mild to moderation restrictions, as opposed to Dr. Vitolo's determination that Plaintiff suffered from marked limitations. The ALJ also noted, "[A] medical expert's opinion is not binding on an Administrative Law Judge."  (R. at 784.)

It is true a bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient to satisfy an ALJ's duty to set forth the reasons for her decision.  <u>Burnett v. Commissioner of Social Security Administration</u>, 220 F.3d 112, 119–20 (3d Cir. 2000).  An ALJ is not required, however, "to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  <u>Jones v. Barnhart</u>, 364 F.3d 501, 504–05 (3d Cir. 2004).  An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing.  <u>Id.</u>

In this case, the ALJ exceeded the analysis required for a proper step three evaluation.  She identified the listings that Dr. Vitolo determined Plaintiff met, set forth his opinions, provided the detailed opinions of three other examining physicians which contradicted Dr. Vitolo's opinions, and

11

explained why she found those opinions more persuasive than Dr. Vitolo's. Plaintiff may disagree with the ALJ's decision to provide greater weight to the opinions of the three examining sources over the opinions of Dr. Vitolo, but that does not render the ALJ's step three determination to be unsupported by substantial evidence. The Court finds that the ALJ more than sufficiently conducted the step three analysis in determining that Plaintiff's impairments did not meet any of the listings. See Jacques v. Berryhill, 2017 WL 2577571, at *5 (D.N.J. 2017) (citing Jones, 364 F.3d at 505; Scuderi v. Comm'r of Soc. Sec., 302 F. App'x 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); Klangwald v. Comm'r of Soc. Sec., 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."); Rivera v. Commissioner of Social Sec., 164 F. App'x 260, 262 (3d Cir. 2006) (citations and quotations omitted) ("The claimant has the burden of proof in steps one, two, and four. No one bears the burden of proof for step three, because

12

it involves a conclusive presumption based on the listings. The claimant must provide sufficient medical evidence in step three to show that her impairment is equal in severity to a listed impairment, but need not identify the relevant listings.").

## 2. Whether the ALJ erred in her RFC determination

The ALJ made two RFC determinations,[8] one considering Plaintiff's impairments prior to May 5, 2015 and one for after that period. The RFCs are the same except that in the period before May 5, 2015, the ALJ found that Plaintiff would be off-task 5% of the time, while for the period after May 5, 2015, the ALJ found that Plaintiff would be off-task 15% of the time:

> The claimant had the residual functional capacity to perform a full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can sit up to 6 hours per day, but no more than 1 hour at a time and then would need to stand or shift positions for up to 5 minutes per hour while remaining on task. She cannot operate dangerous machinery (defined as machines that cut or shear). She can occasionally climb ramps and stairs. She can occasionally stoop. She be [sic] limited to low stress work (defined as unskilled work involving simple routine tasks having no strict production quotas and no fast production rate pace.[)] She could have no more than occasional interaction with the public, co-workers and supervisors. . . .
>
> [Prior to May 5, 2015] She would be off task 5% of the workday in addition to normal breaks. (R. at 787.)
>
> [After May 5, 2015] She would be off task 15% of the workday in addition to normal breaks. (R. at 800.)

Plaintiff points out, and the ALJ noted, that the May 5,

---

[8] The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

2015 dividing line between disabled and not disabled derived from Plaintiff's May 5, 2015 admittance to an intensive outpatient program. The ALJ explained, "The severity of her psychological symptoms clearly increased with her intensive outpatient program (IOP) admittance with a corresponding increase in her limitations adapting or managing herself. The claimant[] is limited [] in this domain due to her demonstrated deficits, which cause her to be off task 15% of the workday in addition to normal breaks." (R. at 786.)

Plaintiff argues, however, that the ALJ did not sufficiently explain why she found Plaintiff to only be off-task 5% of the time before May 5, 2015. Plaintiff asserts this argument, but other than that conclusory statement, Plaintiff does not articulate what the ALJ failed to consider that would change her determination.

The Court's review of the ALJ's decision, from the step three analysis through the RFC determination and step four, finds it to be thoroughly explained and supported by detailed documentary evidence. In addition to the five pages the ALJ's Opinion spans setting forth her step three analysis, the ALJ discussed the record evidence and explained what she found persuasive and unpersuasive for an additional fifteen pages. (R. at 787-801.) Plaintiff does not show where the ALJ erred in that analysis, and the Court's independent review finds no

error.

Plaintiff's challenge to the ALJ's RCF analysis amounts to a simple disagreement rather than a lack of record evidence to support her decision, and her argument is insufficient to show that the ALJ's decision was not supported by substantial evidence.  See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision."); Desorte v. Commissioner of Social Security, 2019 WL 1238827, at *6 (D.N.J. 2019) (citing Richardson, 402 U.S. at 401; Daring, 727 F.2d at 70) ("This Court must review the evidence in its totality, and take into account whatever in the record fairly detracts from its weight.  Plaintiff has not provided the Court with specific evidence that detracts from the ALJ's RFC assessment, which the Court finds on its independent review to be reasonable and substantially supported."); Barnes v. Commissioner of Social

Security, 2018 WL 1509086, at *4 (D.N.J. 2018) ("Plaintiff does not make any specific contentions as to where the ALJ erred and this Court's own independent review finds no error.  On the contrary, the Court's review of the ALJ's decision finds that the ALJ properly followed the standards set forth above, and that the ALJ's decision was supported by substantial evidence.").

### 3. Whether the ALJ erred at step five

Once it has been determined that a claimant is not capable of performing her past relevant work, the burden shifts to the ALJ to show that the claimant's RFC permits the claimant to perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(b)-(f).  In this case, the ALJ determined that Plaintiff's RFC rendered her capable of performing three jobs between November 30, 2007 and May 4, 2015: final assembler, optical goods, DOT code 713.687-018; rating clerk, DOT code 214.587-010; and addressing clerk, DOT code 209.587-010.  (R. at 803.)  This determination was based on the testimony of a vocational expert ("VE"), who testified that someone with Plaintiff's RFC could perform these unskilled, sedentary jobs.  (Id.)  The VE further testified that the number of existing jobs for these positions were: for final assembler, optical goods with approximately 330,000 jobs nationally; for rating clerk with approximately 400,000 jobs nationally; and for

16

addressing clerk with approximately 300,000 jobs nationally. (Id. at 804.) The VE testified that his testimony was consistent with occupational information as found within the United States Department of Labor Dictionary of Occupational Titles, except for his testimony concerning the position of an addressing clerk, which was based on his professional experience. (Id.)

Plaintiff challenges the ALJ's conclusion that she was capable of performing these jobs, not only because of the erroneous RFC assessment, which the Court has found to be proper, but also because the statistics underlying the VE's testimony regarding the number of jobs in the national economy are significantly flawed. By way of example, Plaintiff posits that if each of the 300,000 optical goods assemblers inspected only two eyeglasses every hour, in one year those optical goods assemblers would have checked enough glasses to supply four pairs of glasses to every adult and child in the United States. Plaintiff argues that such an absurd inflation of available jobs compels the conclusion that the step five determination was not supported by substantial evidence.

This is not the first time the Court has addressed such an argument. See, e.g., Benton v. Commissioner of Social Security, 2019 WL 2285490, at *7 (D.N.J. 2019); Jean-Pierre v. Commissioner of Social Security, 2017 WL 4316880, at *9 (D.N.J.

17

2017). In Benton, this Court stated:

> The Court notes Plaintiff's philosophical objection to the nature of VE testimony and data in Social Security cases. The United States Supreme Court recently touched on that issue and observed that if VEs supported their conclusions with supporting data, VEs' testimony "would be even better - more reliable and probative" and "would be a best practice for the SSA and its experts." Biestek v. Berryhill, 139 S. Ct. 1148, 1155 (U.S. April 1, 2019). The Supreme Court concluded, however, that VEs do not need to provide an applicant with the data supporting their testimony regarding suitable jobs and statistics in order to "clear (even handily so) the more-than-a-mere-scintilla threshold." Id. at 1156.

Benton, 2019 WL 2285490 at *7. This Court therefore rejected the plaintiff's argument that 1,940 tree planter jobs in the United States did not constitute a "significant number of jobs" in an economy that employs 155,962,000 people. Id. (citing Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (200 jobs); Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d Cir. 2013) (569 jobs); see also Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act.")).

This Court in Benton also noted the analysis in Jean-Pierre:

> This Court previously addressed a similar argument where the plaintiff questioned the source and validity of the VE's statistics that purported to support the availability of jobs in the national economy, including that the jobs identified by the VE had not been updated since 1977 (caretaker, photocopy machine operator, marker and addresser) and 1986 (taper and document preparer) and were

18

> woefully outdated. <u>Jean-Pierre v. Commissioner of Social Security</u>, 2017 WL 4316880, at *9 (D.N.J. 2017). This Court found, however:
>
>> Even though this Court recognizes the concerns expressed by former Judge Posner and the Seventh Circuit, and echoed by Plaintiff in this case, the SSA Regulations direct that an ALJ is to take notice of job information available from various governmental and other publications, such as the Dictionary of Occupational Titles, County Business Patterns, Census Reports, Occupational Analyses, and Occupational Outlook Handbook, as well as engage the services of a vocational expert. 20 C.F.R. § 404.1566(b). It is not for this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC. The Court also cannot otherwise direct that an ALJ should not consider the DOT and VE testimony when performing the step five analysis, which would be in contravention of SSA regulations.
>
> <u>Id.</u> (citations omitted). The Court notes that the Supreme Court in <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1153-54 (U.S. April 1, 2019) affirmed the Sixth Circuit, which joined "the ranks of unconvinced courts" which had rejected the Seventh Circuit's categorical rule precluding a vocational expert's testimony from qualifying as substantial evidence if the expert had declined an applicant's request to provide supporting data.

<u>Benton</u>, 2019 WL 2285490 at *7 n.14.

Thus, the Court echoes what it has said before: It is not the province of this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC. Accordingly, because that methodology is the basis for Plaintiff's contention that the ALJ erred at step five, the Court finds Plaintiff's argument unpersuasive.

**III. Conclusion**

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). The Court finds that the ALJ's determination that Plaintiff was not totally disabled between November 30, 2007 and May 4, 2015 is supported by substantial evidence. The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: October 23, 2019        s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.